1
2
3
4
5
6
UNITED STATES DISTRICT COURT
7
EASTERN DISTRICT OF WASHINGTON
8
9 REGENCE BLUESHIELD,                    No. 1:16-cv-03011-SAB
10          Plaintiff,
11      v.                               **ORDER RE: PENDING**
12 SUSAN FINN,                           **MOTIONS**
13          Defendant.
14

15      Before the Court are Plaintiff's Motion to Dismiss Finn's Counterclaim and
16 Motion to Strike Jury Demand, ECF No. 26; Plaintiff's Motion for Judgment on
17 the Pleadings, ECF No. 31; Defendant's Motion to Continue Hearings, ECF No.
18 41; Defendant's Motion to Strike Inadmissible Portions of the Declaration of
19 Regence's Subrogration Coordinator, Lisa Jones, ECF No. 44; and Defendant's
20 Motion to Strike the Second Declaration of Regence's Lisa Jones, ECF No. 50.
21 The motions were heard without oral argument.

22      Plaintiff is represented by J. Gordon Howard and Medora Marisseau.
23 Defendant is represented by Douglas Nicholson.

24                          MOTIONS STANDARD
25  **1.    Fed. R. Civ. P. 12(b)(6)**

26      Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a
27 complaint for "failure to state a claim upon which relief may be granted." In
28 analyzing motions to dismiss, the Court must accept as true all well-pleaded

**ORDER RE: PENDING MOTIONS ~ 1**

factual allegations. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1043 (9th Cir. 2010).

For a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted) "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (citation omitted).

As the Supreme Court explained:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, 556 U.S. at 679.

## 2.    Fed. R. Civ. P. 12(c)

In reviewing a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Id.*

**ORDER RE: PENDING MOTIONS ~ 2**

## BACKGROUND FACTS

Plaintiff Regence Blueshield, an insurance company, is the administrator for a Health & Benefit Plan ("Plan") sponsored by Puget Sound Energy, Inc. ("PSE"). Plaintiff brought suit to enforce the terms of the Plan and to obtain equitable relief. The underlying dispute involves medical expenses paid by the Plan on behalf of Defendant Susan Finn.

Defendant Finn receives medical coverage from PSE, her husband's employer. The medical coverage is provided to PSE employees pursuant to a collective bargaining agreement with the International Brotherhood of Electrical Workers Local Union no. 77.

In October, 2012, Defendant and her husband were riding bikes in Ellensburg, Washington. Defendant was chased down by a large dog and knocked off her bike. She sustained injuries, including injuries to her left shoulder. She maintains she is unable to make full use of her shoulder, and there are no more medical options available to improve or correct the problem. The Plan paid $45,363.44 for Defendant's medical expenses.

Defendant and her husband sued the dog owner and the home owner in Kittitas County Superior Court, and eventually settled with the dog owner for the policy limit amount of $100,000. The parties disagree about whether Defendant needs to reimburse Plaintiff out of the settlement proceeds for the medical expenses it paid. Their disagreement centers on which Plan was in effect at the time of the accident.

Plaintiff maintains that the 2012 Plan, memorialized by the 2012 Summary Plan Description ("SPD"), was in effect at the time of the accident. The 2012 SPD has a Right of Reimbursement and Subrogation Recovery provision, which states, in part, that coverage under the Plan will not be provided for any medical expenses for treatment of an injury that may be recoverable from a third party. This provision also states that acceptance or making a claim for benefit indicates that

**ORDER RE: PENDING MOTIONS ~ 3**

the insured agreed that the Plan is entitled to reimbursement of the full amount of benefits paid out of any settlement or recovery from any source. Most important, the 2012 SPD provides that "[t]he Plan is entitled to reimbursement from the first dollars received from any recovery." ECF No. 1.

Defendant maintains the 2011 Plan was in effect at the time of the accident, and that her husband never received a copy of the 2012 Plan until after this litigation commenced. The 2011 Plan contains a "make-whole" provision, which provides that Plaintiff's right of reimbursement is not triggered unless and until the insured has been fully compensated for his or her loss. The 2011 Plan also specifically indicates that it is effective January 1, 2011, and that although modifications and amendments can be made from time to time, no such modifications or amendments will be effective until 30 days written notice has been given to the members of the group.

## PROCEDURAL HISTORY

On January 20, 2016, Plaintiff filed suit seeking to enforce the terms of the Plan and for equitable relief pursuant to Employee Retirement Income Security Act of 1974 ("ERISA"). It also sought a temporary restraining order enjoining Defendant's counsel from disbursing the settlement proceeds. The Court granted the TRO and the parties stipulated to the entry of a preliminary injunction in which Defendant's counsel agreed to maintain the $45,363,44 in his law firm's IOLTA trust.

In its First Amended Answer to the Complaint, Defendant asserted the following state law counterclaims: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) insurance bad faith; (4) violation of the Washington Consumer Protection Act; (5) breach of fiduciary duty; (6) abuse of process; and (7) negligence.

## ERISA

The Employee Retirement Income Security Act (ERISA) was passed by

**ORDER RE: PENDING MOTIONS ~ 4**

Congress to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal Courts." 29 U.S.C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

Only employee benefit plans within the meaning of 29 U.S.C. § 1002(1) are subject to ERISA, which defines "employee welfare benefit plan" and "welfare plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1191b defines the "term 'group health plan' as:

> an employee welfare benefit plan to the extent that the plan provides medical care . . . to employees or their dependents . . . directly or through insurance, reimbursement, or otherwise. The term "medical care" means amounts paid for (A) the diagnosis, cure, mitigation, treatment, or prevention of disease, or amounts paid for the purpose of affecting any structure or function of the body; (B) amounts paid for transportation primarily for and essential to medical care referred to in subparagraph (A), and (C) amounts paid for insurance covering medical care referred to in subparagraphs (A) and (B). 29 U.S.C. § 1191b(a)(2).

Thus, an ERISA "employee welfare benefit plan" is" (1) a plan, fund, or program; (2) established or maintained (3) by an employer; (4) for the purpose of

**ORDER RE: PENDING MOTIONS ~ 5**

providing medical, surgical, hospital care, [or] sickness . . . benefits . . . (5) to the participants or their beneficiaries. *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 916 (9th Cir. 1997).

Under ERISA's safe harbor regulation, certain group insurance programs are excluded from ERISA's definition of "employee welfare benefit plan" where

> (1) the employer does not make any contributions,
> (2) participation in the program is completely voluntary for employees or members,
> (3)  the sole function of the employer is to permit the insurer to publicize the program to employees, collect premiums through payroll deductions, and remit them to the insurer, and
> (4) the employer receives no compensation in the form of cash or otherwise in connection with the program.

*Stuart v. UNUM Life Ins. Co. of Am.,* 217 F.3d 1145, 1149 (9th Cir. 2000).

A group insurance plan cannot be excluded from ERISA coverage if an employer fails to satisfy any one of the four requirements of the safe harbor regulation. *Id.* The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988).

ERISA requires that welfare benefits plans be "established and maintained pursuant to a written instrument." § 1102(a)(1). In lieu of distribution of the full text of the formal plan documents, ERISA requires that a summary plan description (SPD) be distributed to participants and beneficiaries receiving benefits. 29 U.S.C. §1022(a). The Summary Plan Description ("SPD") is the "statutorily established means of informing participants of the terms of the plan and its benefits," and serves as "the employee's primary source of information regarding employment benefits." *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2002).

ERISA permits participants, beneficiaries, and fiduciaries to bring suit to

**ORDER RE: PENDING MOTIONS ~ 6**

enforce its provisions. A participant or beneficiary may bring a civil action under § 502(a)(1) of ERISA to recover benefits due to her under the terms of her plan, enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1). A participant or beneficiary may also bring a civil action to obtain statutory penalties if the plan administrator fails to meet certain notice requirement. 29 U.S.C. § 1132(a)(2),(c). A participant, beneficiary, or fiduciary may bring a civil action under § 502(a)(3) of ERISA "(A) to enjoin any act or practice which violates any provision . . . of the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions . . . of the terms of the plan. 29 U.S.C § 1132(a)(3). Section 502(a)(3) authorizes equitable remedies to enforce plan terms.[1] *Sereboff v. Mid Atlantic Med. Servs. Inc.*, 547 U.S. 356, 363 (2006).

Generally, actions under §502(a)(3) to recover medical benefits paid for injuries caused by third-parties are viewed as actions seeking to secure an equitable lien by agreement. *US Airways, Inc. v. McCutchen*, __ U.S. __, 133 S.Ct. 1537, 1546 (2013). In order to do so, three criteria must be present: (1) a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party; (2) the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the beneficiary will be reimbursed; and (3) the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary. *Oregon Teamster Emp'rs Trust v. Hillsboro Garbage*, 800 F.3d 1151, 1159 (9th Cir. 2015) (citation omitted).

_____

[1] Under appropriate circumstances, section 502(a)(3) may authorize three possible equitable remedies: estoppel, reformation, and surcharge. *CIGNA Corp. v. Amara*, 563 U.S. 421, 438-443 (2011).

**ORDER RE: PENDING MOTIONS ~ 7**

ERISA includes expansive pre-emptive provisions found in § 514 (29 U.S.C. § 1144(a)). Congress intended for ERISA's civil enforcement provisions to provide exclusive remedies for ERISA-plan participants and beneficiaries. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44-47 (1987). ERISA's detailed provisions set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. *Id.* "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely under minded if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54. Additionally, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is pre-empted. *Aetna Health Inc.*, 542 U.S. at 205.

ERISA contains a saving clause that exempts from the pre-emption clause any state law that regulates insurance. § 514(b)(2)(B). Bad faith claims against insurance companies, however, are not claims that "regulate" insurance. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir. 1998). To "regulate' insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry. *Pilot Life*, 481 U.S. at 50.

**ANALYSIS**

Plaintiff is asking the Court to dismiss Defendant's state law counterclaims and is also seeking judgment on the pleadings. In addition, it is asking the Court to strike Defendant's request for a jury trial on her state counterclaims.

### 1. Plaintiff's Motion to Dismiss for Failure to State a Claim

Plaintiff moves to dismiss Defendant's state law claims, asserting they are preempted by ERISA. Defendant's main argument in opposition to Plaintiff's motion is that the Court does not have jurisdiction over this case because neither

**ORDER RE: PENDING MOTIONS ~ 8**

the 2011 Plan nor the 2012 Plan is an ERISA plan. Defendant maintains the 2012 Plan is not in effect because her husband did not receive a copy of the 2012 Summary Plan Description, and also maintains an SPD is not sufficient under ERISA to set the terms of the Plan. Because there is no ERISA document, there is no ERISA Plan. Defendant then argues that the 2011 Plan is not an ERISA plan because it was not self-funded. Under her theory, because the Court is not interpreting an ERISA Plan, her state law claims are not pre-empted.

Here, both the 2011 Plan and the 2012 Plan are ERISA Plans because they are plans, funds, or programs, established or maintained, by an employer for the purpose of providing medical, surgical, hospital care or sickness benefits to the participants or their beneficiaries. *See Steen*, 106 F.3d at 916. These facts have not been disputed by Defendant. Whether a Plan is an ERISA plan does not depend on whether the Plan is self-funded or insured. Similarly, whether the 2011 Plan or the 2012 Plan is an ERISA plan does not depend on whether Plaintiff acted as an insurance company or an administrator of the Plan.

Moreover, an ERISA plan does not become a non-ERISA plan because the employer does not follow certain ERISA requirements. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) (noting that failure to comply with ERISA requirements is not a basis to escape ERISA obligations). Otherwise, violations of the law would be encouraged, rather than discouraged.

Finally, Defendant has not established that the safe harbor provision applies that would exempt the 2011 or the 2012 Plan from ERISA. Because both the 2011 Plan and the 2012 Plan are ERISA Plans, Defendant's state law counterclaims are pre-empted. As such, Plaintiff's Motion to Dismiss is granted, and Defendant's request for a jury trial is stricken.

## 2. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff asks the Court to find that the terms of the 2012 Plan control and the terms of the 2012 Plan establish that Defendant must reimburse the Plan for

**ORDER RE: PENDING MOTIONS ~ 9**

medical benefits paid. Whether Plaintiff is entitled to judgment depends on whether the 2011 Plan or the 2012 Plan controls. Here, questions of material fact exist regarding which Plan was in effect at the time of the accident. As such, judgment on the pleadings is not appropriate.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion to Dismiss Finn's Counterclaim and Motion to Strike Jury Demand, ECF No. 26, is **GRANTED**.

2.  Plaintiff's Motion for Judgment on the Pleadings, ECF No. 31, is **DENIED**.

3.  Defendant's Motion to Continue Hearings, ECF No. 41, is **DENIED**.

4.  Defendant's Motion to Expedite, ECF No. 43, is **GRANTED**.

5.  Defendant's Motion to Strike Inadmissible Portions of the Declaration of Regence's Subrogation Coordinator, ECF No. 44, is **DENIED**, as moot.

6.  Defendant's Motion to Strike the Second Declaration of Regence's Lisa Jones, ECF No. 50, is **DENIED**, as moot.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 24th day of June, 2016.

Stanley A. Bastian
United States District Judge

**ORDER RE: PENDING MOTIONS ~ 10**